**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**WESTERN DIVISION**

**SABRINA OWENS MALONE**                                        **PLAINTIFF**

**V.**                               **4:05CV00950JMM**

**SECURITY AIRPORT PARKING**                              **DEFENDANT**

**<u>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>**

Pending is the Defendant's Motion for Summary Judgment. Plaintiff has responded to the motion and the Defendant has replied. For the reasons set forth below, the Defendant's Motion for Summary Judgment is GRANTED.

<u>Facts</u>

The facts are as follows:

Plaintiff, Sabrina Owens Malone, is a female who was employed by Security Airport Parking for two different periods from 1995 until March 10, 2005, when she was terminated. Defendant Security Airport Parking, Inc., ("Security") is a provider of parking service near the Little Rock Airport, in Little Rock, Arkansas. Plaintiff brings this action alleging she was fired by the Defendant on the basis of her gender in violation of Title VII of the Civil Rights Act of 1964.

Plaintiff was employed as a shuttle bus driver for Security in 1995 and quit that same year. Plaintiff was rehired in 1997 as a cashier and driver and relinquished her cashier duties in 2004 to focus on shuttle driving. Plaintiff was an at-will employee. From 1998, until her termination, Plaintiff was under the supervision of Al Smith.

A shuttle bus driver picks up customers who have parked their vehicles at Security and delivers the customers to the airport, and brings such customers who have arrived at the airport

back to Security to retrieve their vehicles.  Plaintiff was the only female shuttle driver at the time of her termination.   Smith testified that their were at least four female drivers other than the Plaintiff while he had worked at Security.  Smith testified that if a female applied to be a driver in the future he would have no problem hiring a woman.

Plaintiff was scheduled to work four days, Tuesday, Thursday and Friday from 4:00 p.m. until closing, and Sunday from 2:00 p.m. until closing.  Closing was around midnight or when the last flights arrived.  Security employees are full time when they work 32 hours a week.

Smith gave Plaintiff a Performance Appraisal on January 4, 2001, noting that she should "work toward improving the work relationship you have with your co-workers."  He also told plaintiff in that appraisal that "if a situation arises with a customer minimize the frustration by addressing the client in a manner that will ease the tension."

Security's Employee Handbook sets forth the expected conduct of employees in regard to customer relations as follows:

> Certain rules and regulations regarding employee behavior are necessary for the efficient operation of the Company and for the benefit and protection of the rights and safety of all.  Conduct that interferes with operations, brings discredit to the Company, or is offensive to customers or fellow employees will not be tolerated.
>
> (1) All employees are expected to conduct themselves and behave in a manner that is conducive to the efficient operation of the Company.  Such conduct includes:
>
> ***
>
> (g) Treating all customers and visitors as guests of the Company.  (See Customer Relations, page 47.)
>
> (h) Refraining from behavior or conduct deemed offensive or undesirable or which is subject to disciplinary action.
>
> ***

CUSTOMER RELATIONS

The Company will provide its customers with the best possible service. Employees are expected to treat customers with the best possible service. Employees are expected to treat customers in a courteous, respectful manner at all times.

(1) Employees should always remember that the customer comes first and is entitled to the same thoughtful treatment that the employee would like to receive. Customers should not be treated in a condescending or impolite manner, and should never be kept waiting an unreasonable amount of time.

The Employee Handbook further states that failure to comply with these customer relations rules can subject an employee to disciplinary action, up to and including discharge. Plaintiff received the Handbook on July 18, 2003. Plaintiff admitted that she was told to treat customers like guests, and to say nothing offensive to customers.

On January 25, 2004, Smith gave Plaintiff a written warning and one week of unpaid suspension for sitting in the Security parking lot for 23 minutes after another driver arrived. Her instructions were to always return to the airport upon the arrival of another bus. Plaintiff and a male driver, Eddie Veliz, were counseled about pick-up procedures again in February 2005.

Security lost a driver on December 30, 2004. As a result, all drivers picked up extra shifts. Plaintiff requested an additional shift on Wednesdays. Smith chose to give the shift to Veliz, who made $6.25 an hour versus the Plaintiff who made $7.05 an hour. In addition, Veliz was working fewer hours than Plaintiff and would not cause Security to incur as much overtime expense. Plaintiff was already receiving significant overtime pay according to employee time cards.

On March 3, 2005, Clif Christopher, a regular Security customer complained to the cashier on duty about the service he received. Smith had already left for the day. On the Monday

following March 3, a driver, Richard Stewart, informed Smith that Christopher had returned from another trip that morning and again asked to speak to Smith about a complaint he had from an incident the preceding week.  On March 9th, Christopher returned from a trip and complained to Security employees Judy Burkhart and Jane Staggs about the March 3 incident.  Smith was in that day so Christopher went in to relay his complaint.

Christopher told Smith that after waiting for 15 minutes at the airport, Plaintiff arrived. Christopher asked Plaintiff why it took her so long and then stated that if it was going to take so long, he might as well park at the airport and walk to his car.  Christopher asserts that Plaintiff then said, "I don't care what you do.  It's not my company."  This was consistent with what he had told Burkhart and Staggs earlier.  Christopher followed up his complaints to the cashier, Stewart, Burkhart, Staggs and Smith with a written letter on May 2, 2005.

Smith could not recall any other employee ever being accused of making inappropriate comments while he had been with Security.  Smith found Plaintiff's actions unacceptable and combined with Plaintiff's past disciplinary record decided to terminate Plaintiff's employment. On March 11, Smith presented Plaintiff with Christopher's complaints and a letter of termination.

Judy Burkhart testified that customers occasionally complained about driver timeliness. Burkhart said that one male driver did have a complaint made against him by the husband of a wife that had been dropped off by the husband.  The husband thought the driver should have driven the wife to her car and the driver did not offer to do so.  The difference main difference between this and the Plaintiff's action's at hand is that there was no conversation between the couple and the driver.

Plaintiff points out that she had only three complaints filed against her in over seven years of employment with Security. With the first complaint in 2003 there was no written warning. In January, 2004, there was a customer complaint regarding timeliness that resulted in her suspension. On March 10, 2005, Smith met with Plaintiff to discuss the customer complaint.

Plaintiff alleges that in the meeting she denied to Smith that the incident described by the customer had occurred. Smith's deposition is in complete contradiction of the Plaintiff's denial as he maintains that Plaintiff not only admitted that she said it, but that she said she gets tired of the being nice to the customers. Plaintiff asserts her first knowledge of the alleged events was when Smith confronted her on March 10, 2005.

Plaintiff points out that Smith did not consult with anyone about her termination, he did not investigate the truthfulness of Christopher's allegations, he decided to terminate her without hearing her side of the story, and he never considered an alternative to termination. Plaintiff also alleges Defendant declined to add a day to her schedule and instead gave that day to one of the male drivers.

Plaintiff filed this action alleging Security terminated her from her position as a driver on account of her gender in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e et.seq. Security filed this motion for summary judgment claiming Plaintiff failed to establish a *prima facie* case of sex discrimination and, in the alternative, that she has failed to provide any evidence of pretext.

Standard for Summary Judgment

Summary judgment is appropriate only when there is no genuine issue of material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874

(8th Cir. 1987); Fed. R. Civ. P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry is the threshold inquiry of determining whether there is a need for trial -- whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

The Eighth Circuit Court of Appeals has cautioned that summary judgment should be invoked carefully so that no person will be improperly deprived of a trial of disputed factual issues. *Inland Oil & Transport Co. v. United States*, 600 F.2d 725 (8th Cir. 1979), *cert. denied*, 444 U.S. 991 (1979). The Eighth Circuit set out the burden of the parties in connection with a summary judgment motion in *Counts v. M.K. Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the moving party for summary judgment is only to demonstrate, *i.e.*, '[to] point out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339. (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273-274 (8th Cir. 1988) (citations omitted)(brackets in original)). Only disputes over facts that may affect the outcome of the suit under governing law will properly preclude the entry of summary judgment. *Anderson*, 477 U.S. at 248.

Discussion of the Law

6

To establish a *prima facie* case of gender discrimination, the following elements must be proved by Plaintiff:

(1) Plaintiff was a member of a protected group;
(2) Plaintiff was meeting the legitimate expectations of her employer;
(3) Plaintiff suffered an adverse employment action; and
(4) similarly situated employees, who are not members of the protected group were treated differently.

*Clark v. Runyon* 218 F.3d 915 (8th Cir. 2000).

Once a *prima facie* case is established, a rebuttable presumption of discrimination arises and the burden then shifts to the employer to articulate a legitimate nondiscriminatory business reason for its actions. *McDonnell Douglas Corp. V. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973). Once such reason is produced, "the presumption disappears and the [plaintiff] bears the burden of proving that the proffered reason was pretextual and the real reason for the [adverse employment action] was discrimination." *Thomas v. First Nat'l Bank*, 111 F.3d 64 (8th Cir. 1997).

In this case it is agreed that Plaintiff is a member of a protected group based on her gender and she suffered an adverse employment action due to her termination. The evidence, however, shows Plaintiff was not meeting the legitimate expectations of her employer. Company policy dictated that Plaintiff treat customers as guests, refrain from behavior or conduct deemed offensive or undesirable, and should not treat customers in a condescending or impolite manner. The policy states, "conduct that interferes with operations, brings discredit to the Company, or is offensive to customers or fellow employees will not be tolerated.". Plaintiff admits she was given the handbook and appraised of it verbally.

On March 3, 2005, Plaintiff made clearly inappropriate remarks to a long-time, frequent

customer, Clif Christopher.  Plaintiff's conduct is specifically mentioned and prohibited in the employee handbook as a direct violation of company policies.  Plaintiff also left the customer waiting at the airport for 15 minutes.   The dissatisfied customer made complaints to five different employees of Security on different days and submitted a written complaint.  In addition to this conduct,  Plaintiff had been reprimanded and suspended without pay for a week for not following pick-up procedures in the previous year.    Plaintiff had previously been counseled in improving relations with her co-workers and minimizing customer frustrations.

Plaintiff denies the allegations surrounding the March 3, 2005 incident and denies that she admitted talking back to the customer to Smith at her termination meeting.  Plaintiff argues her denial that the incident occurred creates a fact issue precluding summary judgment.  The Court concludes that there is no material issue of fact because Security had no reason to doubt the complaint of the customer.  The relevant inquiry is whether the employer believed the employee guilty of conduct justifying discharge, not whether she actually was guilty of the conduct.  *Harvey v. Anheuser-Bush, Inc.*, 38 F.3d 1069 (8th Cir. 1994); *Mershon v. St. Louis University*, *et al*, 442 F.3d 1069 (8th Cir. 2006).

Plaintiff further argues that these reasons did not warrant dismissal because there had been no complaints such as this in the past and that she was not allowed to give her account before her termination was decided.  The Court finds this argument without merit.  Even if the Court were to assume Plaintiff had presented a *prima facie* case of gender discrimination, Security provided the Court with evidence of legitimate non-discriminatory reasons for Plaintiff's termination.

Lastly, Plaintiff has not offered any evidence that similarly situated employees, who were

not a member of the protected group, were treated differently.  Particularly, there is no instance plaintiff can point to where a male employee ever made a remark such as she made.  At best Plaintiff points to an instance were the driver failed to voluntarily drive a woman to her car and instances of male driver's being late who were not terminated.  In Plaintiff's brief she argues that Judy Burkart said a male employee had been discourteous to customers in the past and was not terminated.  A closer reading of Burkhart's testimony reveals that she never identified the employee by gender or name.

Burkhart's final argument regarding similarly situated employees is that Eddie Veliz was given an extra day in his schedule that she had requested.  The court notes that Security had a legitimate financial interest in giving Veliz the requested day because he made less per hour and their time cards showed Plaintiff was already receiving significant overtime pay.

In conclusion,  Plaintiff has failed to sustain her burden of proof in establishing two elements of her *prima facie* case alleging sex discrimination in her termination.  Plaintiff has failed to present evidence which would demonstrate that she was meeting the legitimate expectations of her employer.   There is no proof that Plaintiff's similarly situated male counterparts were treated differently.  Plaintiff has also failed to present any evidence of pretext.  Accordingly, Defendant's Motion for Summary Judgment (Docket #35 ) is GRANTED.  The Clerk is directed to close the case.

IT IS SO ORDERED this 23rd day of February 2007.

*/s/ James M. Moody*
James M. Moody
United States District Judge